**I IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NICOLE SAULINO,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 26-4478** |
| | : | |
| **WELLS FARGO BANK, N.A., *et al.*,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**YOUNGE, J.** **OCTOBER 26, 2026**

Plaintiff Nicole Saulino initiated this *pro se* civil action against Wells Fargo Bank, N.A ("Wells Fargo"). She subsequently filed a First Amended Complaint naming Wells Fargo, the State [sic] of Pennsylvania, "County Court Administrations," State Farm Insurance, the Pennsylvania Department of Education, the Pennsylvania Department of Labor & Industry, the Pennsylvania Department of Human Services ("DHS"), Aetna Life Insurance Company, and Does 1-100.[1] (ECF No. 11.) Saulino also moved to proceed *in forma pauperis* and for a temporary restraining order and "omnibus injunction." (*Id.*) For the following reasons, the Court will grant her motion to proceed *in forma pauperis* and dismiss the First Amended Complaint. Saulino's motion for temporary restraining order and injunctive relief will be denied.

[1] An amended complaint, once submitted to the Court, serves as the governing pleading in the case because an amended complaint supersedes the prior pleading. *See Shahid v. Borough of Darby*, 666 F. App'x 221, 223 n.2 (3d Cir. 2016) (*per curiam*) ("Shahid's amended complaint, however, superseded his initial complaint." (citing *W. Run Student Hous. Assocs. LLC v. Huntingdon Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013))); *see also Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 1611 (2020) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. Thus, the most recently filed amended complaint becomes the operative pleading." (internal citations omitted)); *see also Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (holding that "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings").

## I. FACTUAL ALLEGATIONS[2]

Saulino's allegations in her First Amended Complaint are confused and hard to follow, failing to set forth allegations regarding most of the Defendants she has named. She essentially claims that a widespread conspiracy exists between her family members, various financial and state institutions, and others, from her childhood to the present time, the purpose of which was to fraudulently deprive her of financial assets, an education, and general life assistance to which she believes she is entitled. (Am. Compl. at 2-3.) Specifically, she claims Defendant Wells Fargo intentionally withheld and blocked access to her "custodial account records," presumably gifts and/or assets she believes were transferred to under the Uniform Transfers to Minors Act, "which has enabled long-term financial deprivation." (*Id*. at 2.) She claims that since she was a minor, "a highly coordinated network of paternal/maternal relatives, family guardians, and close associates,"[3] have utilized her "as an active, involuntary tool for widespread insurance fraud, fraudulent settlements, non-profit exploitation, and systemic identity theft." (*Id*.) She avers the individual "acting as her mother" previously worked for Defendant Aetna selling health insurance and "possesses specialized, extensive knowledge of the law" that placed Saulino "in harm's way, isolate[d] her from her children, and [left] her with no access to legal or financial

---

[2] Saulino submitted a seventeen-page typewritten First Amended Complaint ("Am. Compl."). (ECF No. 11.) The Court adopts the sequential pagination assigned by the CM/ECF docketing system. The factual allegations set forth in this Memorandum are taken from First Amended Complaint. The Court may also take judicial notice of prior court proceedings. *See, e.g., In re Ellerbe*, No. 21-3003, 2022 WL 444261, at *1 (3d Cir. Feb. 14, 2022) (*per curiam*) (citing *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988) (holding that court may take judicial notice of the record from previous court proceedings)).

[3] Although Saulino does not name any specific family members or individuals as defendants, the Court will treat the individuals referenced throughout the First Amended Complaint as defendants out of an abundance of caution. Because there are several defendants with the last name "Saulino," the Court will refer to Plaintiff Nicole Saulino by her last name, "Saulino," and the relevant defendants by their first names.

assistance." (*Id.*) Saulino claims she has also been surrounded by unidentified "highly educated professionals" her entire life, perhaps referring to the Doe Defendants, who have "intentionally deprived [her] of a proper education, consumer financial literacy, and career guidance" to disguise the "ongoing structural fraud to ensure she could not defend herself." (*Id.* at 2-3.) She contends she "may have been a foster or adopted child" and members of her family "actively asserted she had no assets or inheritance," and state agencies like Defendant DHS "have structural financial incentives to maintain this dynamic." (*Id.* at 3.) Saulino claims she "has been subjected to a pattern of coordinated, staged incidents—including staged motor vehicle accidents resulting in physical trauma (Assault with a Deadly Weapon) and staged criminal setups—engineered to create financial insurance payouts for third parties." (*Id.* at 4.) She lists several incidents that have occurred throughout her life to explain the alleged pattern of "systemic" violations of her rights, such as her children being "intentionally brought into the world to be utilized as surrogacy babies" (*id.* at 3), mysterious bank accounts and properties transferred out of her name without her consent, not receiving a proper education, being forced into romantic relationships and to provide childcare services for her neighbors, being barred from returning to her family home and evicted twice, having conflicts with people in high school, and "targeted and set up" in environments involving illicit substances with individuals who have ties to law enforcement (*id.* at 4-7).[4] Related to the "staged motor vehicle accidents," she alleges on August 22, 2026, she was involved in a "highly suspicious motor vehicle collision" and Defendant State Farm Insurance immediately declared her vehicle a total loss, pressuring a forced payout. (*Id.* at 9-10.) This was the second suspicious accident she was involved in, the

[4] The Court is unable to discern a viable claim for many of the specific incidents she lists, such as being evicted, and presumes she included this information for background purposes.

first being in December 2025 when State Farm and Pep Boys blocked her from filing a vandalism claim because her "Uncle John Saulino" claimed in Montgomery County Orphan's Court that the vehicle was paid off when it was actually repossessed by the bank. (*Id*. at 10.) She believes John was paying for her vehicle and insurance expenses with her hidden money in an attempt to conceal it from her. (*Id*. at 10-11.)

Saulino also alleges federal and state entities benefit from her exploitation and takes issue with the "local county courthouse personnel strictly refusing to provide guidance to *pro se* filers" leaving her "with no structural method to learn [her] basic rights" or understand how court proceedings are conducted. (*Id*. at 3.) She specifically references a case in the Montgomery County Orphan's Court throughout her First Amended Complaint that appears to be related to the guardianship of Gerald Saulino and his assets, presumably the inheritance to which she believes she is entitled. (*Id*. at 5-6.) She was not present during the guardianship court proceedings because she allegedly was not properly served even though she was an "interested party" to Gerald's estate. (*Id*. at 5.) She alludes to being cut off from Gerald's estate by "the uncles," presumably Christopher and John Saulino, and others to "prevent the disclosure of her rightful inheritance, or settlement funds of any kind that her identity was used to generate in the first place."[5] (*Id*. at 5-6.) She contends "if the Saulino family is not her biological family, they

---

[5] A review of the public records corroborates that Saulino was listed as an interested party in the Montgomery County case appointing guardianship over Gerald's estate. *See In Re: Saulino, Gerald, an alleged incapacitated person*, No. 2025-X2644 (Montgomery Co. O.C.); *see also* https://courtsapp.montcopa.org/psi3/v/detail/Case/221027 [last accessed: Oct. 23, 2026]. The public record reveals a Petition for adjudication of incapacity and appointment of a guardian of the estate was filed on June 25, 2025, and a Final Decree was entered by the Court on August 28, 2025, appointing Christopher and John Saulino as plenary permanent co-guardians of Gerald's estate. *See id.* Saulino subsequently filed several motions and objections challenging the Court's Final Decree, including requesting disbursement of funds from the estate, but her motions were denied and the Court ordered that no changes were to be made to the Final Decree appointing Christopher and John as co-guardians. *Id.*

have engaged in systemic identity theft to strip [her] of her true birthright, inheritance, and vital records." (*Id*. at 9.) She believes that unnamed municipal and Montgomery County employees have accepted financial incentives from her family to help them keep her assets, trusts, and legal settlements from her. (*Id*. at 10.)

As a result of these events, Saulino has ultimately been left vulnerable to financial instability, evictions, the inability to get an education, custody issues with her children, and general harm to her well-being and overall success in her life. (*Id*. at 4-5, 8.) She brings claims against Defendants for violating her constitutional rights, civil liberties, and under 18 U.S.C. 1028A (Aggravated Identity Theft)[6] for attempting to conceal her assets.[7] (*Id*. at 2.) She requests the Court to, *inter alia,* order various records, audits, and investigations into these

---

[6] The statute Saulino relies upon, 18 U.S.C. § 1028A, is a federal criminal statute that punishes aggravated identity theft. Criminal statutes generally do not give rise to a basis for civil liability, *see Brown v. Progressive Specialty Ins. Co.*, 763 F. App'x 146, 147 (3d Cir. 2019) (*per curiam*) ("Brown's mere citation to various constitutional provisions cannot transform his state law claims into causes of action 'arising under' the Constitution."), and the federal statute criminalizing aggravated identity theft specifically does not provide for a private cause of action. *See Prater v. Am. Heritage Fed. Credit Union*, 351 F. Supp. 3d 912, 917 (E.D. Pa. 2019) (dismissing claim asserted under 18 U.S.C. § 1028A as it "does not give rise to a civil cause of action").

[7] Throughout her First Amended Complaint, Saulino also complains about processes and procedures that harm the rights of others. (*See, e.g.* Am. Compl. at 3, 14-15.) For example, she alleges discriminatory practices of Defendant DHS for giving social workers "incentives to keep people homeless." (Am. Compl. at 15.) She also mentions lawsuits on behalf of minor students and her minor children. (*Id*. at 14-15.) To the extent she is attempting to do so, Saulino may not pursue claims or seek damages based on harm allegedly suffered by her children or others. *See, e.g.*, *Murray on behalf of Purnell v. City of Philadelphia*, 901 F.3d 169, 170 (3d Cir. 2018) ("Although an individual may represent herself or himself pro se, a non-attorney may not represent other parties in federal court."); *Township of Lyndhurst, New Jersey v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) ("[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim) (quotations omitted); *Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 88-32 (3d Cir. 1991) (holding that a parent could not bring claims on behalf of his child because a *pro se* litigant who is not an attorney may not pursue claims on behalf of anyone other than himself).

alleged incidents to verify her true identity and attempt to uncover information to reveal that Defendants are in fact behind the events described throughout her First Amended Complaint. (*Id*. at 11-16.) She also seeks an order compelling Defendants to give her a portion of Gerald's contested assets in the Montgomery County Orphan's Court[8] and to be permanently enjoined from surveilling, intimating, retaliating, and staging civil or criminal incidents against her or her children. (*Id*. at 11, 13-14.) She further seeks referral of her case to federal law enforcement agencies[9] and appointment of a guardian ad litem to represent her best interest, protect her civil

---

[8] To the extent Saulino is requesting relief from the state court's order granting Christopher and John Saulino co-guardianship over Gerald's estate, the Court does not have jurisdiction to grant such relief. In *Princess Lida of Thurn & Taxis v. Thompson*, the Supreme Court held courts are prevented from exercising jurisdiction when a court in a previously filed action is exercising control over the property at issue and the second court must exercise control over the same property in order to grant the relief sought, even where the property has not actually been seized. 305 U.S. 456, 466 (1939). Applying this principal, the United States Court of Appeals for the Third Circuit recently held a district court lacked jurisdiction to hear a party's suit brought under section 1983 where the party asked the district court "to order the distribution of specific property subject to the jurisdiction of the Orphans' Court" because "[t]o grant the relief sought by the plaintiffs, the District Court would have had to exercise control over the shares of stock at issue." *Dyno v. Dyno*, No. 20-3302, 2021 WL 3508252, at *3 (3d Cir. Aug. 10, 2021) (*per curiam*); *see also Lefkowitz v. Bank of New York*, 528 F.3d 102, 107 (2d Cir. 2007) (concluding that providing requested specific performance and declaratory relief would require the federal court "to assert control over property that remains under the control of the state courts"). Like in *Dyno*, the Court does not have jurisdiction to exercise control over Gerald's estate.

[9] Relief in the form of filing criminal charges or the investigation of the crimes is not relief the Court can grant in a § 1983 action. *See, e.g., Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (finding that a citizen lacks standing to contest prosecutorial policies "when he himself is neither prosecuted nor threatened with prosecution") (citations omitted); *Lewis v. Jindal*, 368 F. App'x 613, 614 (5th Cir. 2010) ("It is well-settled that the decision whether to file criminal charges against an individual lies within the prosecutor's discretion, and private citizens do not have a constitutional right to compel criminal prosecution.") (citations omitted); *Little v. Outlaw*, No. 24-4033. 2025 WL 581164, at *10 (E.D. Pa. Feb. 20, 2025) (collecting cases and stating "private citizens do not have a constitutionally protected right to investigation of criminal charges").

rights, and generally assist with the investigations into verifying her identity and retrieving the necessary records.[10] (*Id*. at 16-17.)

## II. STANDARD OF REVIEW

The Court will grant Saulino leave to proceed *in forma pauperis* because it appears that she is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(i) applies, requiring the Court to dismiss the First Amended Complaint if it is frivolous. A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The use of the term "frivolous" in § 1915 "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Id.* Section 1915 accords judges "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless . . . ." *Id.* at 327. "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible[.]" *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Additionally, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the First Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under

---

[10] The Court recognizes its obligation under Federal Rule of Civil Procedure 17(c)(2) to protect an "incompetent person who is unrepresented in an action." There is no indication Saulino has been adjudicated incompetent to warrant appointment of a guardian ad litem, attorney, or other representative. Even assuming *arguendo* Rule 17 obligations did apply here, it would be improper to appoint a guardian or counsel for her because her claims will not pass screening under § 1915 for the reasons discussed herein. *See Powell v. Symons*, 680 F.3d 301, 307 (3d Cir. 2012) ("In the context of unrepresented litigants proceeding *in forma pauperis,* this inquiry [under Rule 17] would usually occur after the preliminary merits screening."); *see also Himchak v. Dye*, 684 F. App'x 249, 252 (3d Cir. 2017) (*per curiam*) ("Because, as discussed below, we agree that the District Court properly dismissed the complaint under the screening provisions, it did not abuse its discretion by not appointing a guardian to protect Himchak's interests pursuant to Fed. R. Civ. P. 17(c).").

Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether a complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *see also Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* First Amended Complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Because Saulino is proceeding *pro se*, the Court construes her allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245).

## III. DISCUSSION

### A. Saulino's Allegations are Factually Frivolous

As an initial matter, Saulino may not proceed on her claims because her allegations, to the extent decipherable, lack a basis in fact and are clearly frivolous. The Court has thoroughly reviewed Saulino's First Amended Complaint and cannot discern any plausible basis for a non-frivolous claim upon which she could move forward. Saulino appears to assert that her family members conspired with various government agencies and their employees, as well as private entities and individuals, throughout her entire lifetime to steal her identity and hold her back in

essentially every way in order to steal her assets, property, and inheritance from Gerald's estate. She claims there have been grand attempts to harass, intimidate, and even harm or kill her through staging motor vehicle accidents and she questions if her family is even her biological one, appearing to allege this conspiracy started at her birth to ultimately one day harm and steal from her. These allegations are wholly incredible. Accordingly, the Court will dismiss Saulino's claims, without leave to amend, as factually baseless. *See, e.g., Mina v. Chester County*, 679 F. App'x 192, 195 (3d Cir. 2017) (*per curiam*) (agreeing with district court's frivolity determination "[g]iven [plaintiff's] efforts to connect his allegations about actions and events over approximately 20 years into a vast conspiracy against him, as well as the outlandish nature of some of his claims (such as the planting of devices on his body and the defendants' revenge for his refusal to participate in the cover-up of the circumstances surrounding the death of an FBI agent's wife"); *Price v. Fed. Bureau of Investigation*, No. 20-3015, 2020 WL 4368063, at *3 (E.D. Pa. July 30, 2020), *aff'd*, 845 F. App'x 106 (3d Cir. 2021) (finding plaintiff's allegations to be factually frivolous where plaintiff asserted that "numerous law enforcement agencies, attorneys, prison officials, and medical professionals have used neurological and psychological technology to control the 'four basic groups of his brain and mental functions' and "that the use of this 'technology' and 'mind control' has caused him numerous impairments and drove him to criminal and erratic behavior"); *Harley v. City of Phila. City Gov't*, No. 21-3680, 2021 WL 4844156, at *2 (E.D. Pa. Oct. 18, 2021) (dismissing as frivolous Harley's claims based on "a conspiracy by Defendants to target her with wiring, voices, and electrical activity, and to murder her"). Even if Saulino's allegations were not factually frivolous, which the Court concludes they are, her claims also do not support any plausible constitutional claim for the additional reasons as set forth below.

### B. The Civil Rights Claims Fail to State a Claim

Saulino alleges her constitutional rights were violated. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law." *Groman v. Township of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995).

#### 1. Claims Against the Commonwealth and its Agencies

Saulino names the Commonwealth as well as its Departments of Education, Labor and Industry, and Human Services. States are not considered "persons" for purposes of Section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989). Furthermore, the Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *see also A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003); *Karns v. Shanahan*, 879 F.3d 504, 519 (3d Cir. 2018) (noting that "'[s]tates or governmental entities that are considered "arms of the State" for Eleventh Amendment purposes' are not 'persons' under § 1983") (quoting *Will,* 491 U.S. at 70); *Betts v. New Castle Youth Dev. Ctr*., 621 F. 3d 249, 253 (3d Cir. 2010) ("State governments and their subsidiary units are immune from suit in federal court under the Eleventh Amendment."); *C.H. ex rel. Z.H. v. Oliva,* 226 F.3d 198, 201 (3d Cir. 2000) (holding the "Department of Education is a state agency and as such is immune from suit in a federal court without regard to the nature of the relief sought."); *Washington v. Citizens Bank,* No. 26-4465, 2026 WL 2491778, at *8 (E.D. Pa. Aug. 25, 2026) (dismissing the Commonwealth, several Commonwealth agencies, including the Pennsylvania Department of

Labor & Industry, and courts of the Commonwealth under Eleventh Amendment Immunity); *Sherle v. Pa. Dep't of Hum. Servs.*, No. 21-140, 2022 WL 17469468, at *2 (W.D. Pa. Dec. 6, 2022) (dismissing § 1983 claim against DHS as barred by the Eleventh Amendment).

Saulino also names "County Court Administrations" as a defendant, which the Court understands to be a reference to the Montgomery County Orphan's Court, the only county court mentioned in her pleading. The Orphan's Court is part of Pennsylvania's unified judicial system, and thus shares in the Commonwealth's Eleventh Amendment immunity. *See O'Brien v. Orphans Ct. of Montgomery Cnty.*, No. 24-2897, 2025 WL 3008817, at *3 (E.D. Pa. Oct. 27, 2025) ("This Court concludes that Orphans Court also cannot be sued under § 1983 for a violation of Plaintiffs' due process rights because suing Orphans Court is the same as suing the state itself.") (citing *Benn v. First Jud. Dist. of Pa.*, 426 F.3d 233, 238 (3d Cir. 2005)). Because the Commonwealth and its agencies are immune from liability under § 1983, the claims against them will be dismissed.[11]

**2. Claims Against Private Individuals and Entities and Section 1983 Conspiracy Claims**

[11] Saulino alleges unidentified court staff took bribes from her family to conceal her inheritance and other assets. To the extent these unknown persons are state employees named in their official capacities, those claims would actually be claims against the Commonwealth and are also barred by the Eleventh Amendment. *A.W.*, 341 F.3d at 238. The Court recognizes an exception to Eleventh Amendment immunity exists in specific circumstances permitting a plaintiff to seek prospective injunctive or declaratory relief to stop an ongoing violation of federal law against Commonwealth *officials*, *see Ex parte Young*, 209 U.S. 123, 188-89 (1908). However, because her underlying claims related to court employees harassing and surveilling her are frivolous, her request for them to stop such behavior is denied. To the extent the unidentified court staff are named in their individual capacities, Saulino does not name or make any factual allegations against any specific individual and thus any such claim is not plausible. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable). Moreover, because her overall allegations are frivolous, there is no cause to grant leave to amend to attempt to allege personal involvement. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).

Saulino names Wells Fargo, State Farm Insurance, and Aetna Life Insurance Company as defendants, who appear to be private entities. She also claims that "a highly coordinated network of paternal/maternal relatives, family guardians, and close associates," who appear to be private individuals, have utilized her "as an active, involuntary tool for widespread insurance fraud, fraudulent settlements, non-profit exploitation, and systemic identity theft." (Am. Compl. at 2.) However, Saulino does not assert any facts related to how these individuals and entities violated her civil rights. Further, these Defendants appears to be private individuals and entities rather than "state actors" subject to liability under § 1983 for constitutional violations. Whether a defendant is acting under color of state law — i.e., whether the defendant is a state actor — depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). "To answer that question, [the United States Court of Appeals for the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted). Additionally, "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999). Rather, to support a finding of state action, "the government must be 'responsible for the specific conduct of which the plaintiff complains.'" *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017)

(quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). None of those criteria is met here. The actions asserted against these private entities and individuals for allegedly holding her back in life to ultimately keep her from receiving her inheritance or other assets cannot be considered action "of the State itself." *Leshko*, 423 F.3d at 339; *see also Grapentine v. Pawtucket Credit Union*, 755 F.3d 29, 31 (1st Cir. 2014) ("Significantly, [Section] 1983 does not apply to merely private conduct, no matter how discriminatory or wrongful." (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotations omitted))).

Nor can these private individuals and entities be considered state actors based on allegations of conspiratorial conduct between them and court employees involved in the outcome of Gerald's guardianship proceedings or other court proceedings that allegedly deprived her of her assets or inheritance. The mere fact that the state court proceedings resulted in Christopher and John being appointed guardianship over Gerald's estate, and that court staff or others abided by such rulings, are not sufficient to allege plausibly the existence of a conspiracy. *See, e.g., Dennis v. Sparks*, 449 U.S. 24, 28 ("[M]erely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge."); *Stephens v. Kenney*, 802 F. App'x 715, 720 (3d Cir. 2020) (*per curiam*) (conclusory allegations that guardian and attorney conspired with state actor to deprive plaintiff of due process did not state a basis for state action); *Young v. Kann,* 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (plaintiff cannot rely exclusively "upon his own suspicion and speculation" to establish a conspiracy claim). Saulino's allegations are insufficient for finding that the private defendants may be considered state actors for purposes of § 1983. *See generally Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotations omitted);

*see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."). Accordingly, the claims against the private individuals and entities will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Saulino leave to proceed *in forma pauperis* and dismiss the First Amended Complaint as factually frivolous and for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B).[12] The Court concludes that any attempt to amend would be futile. *See Grayson*, 293 F.3d at 108, 110. The request for a temporary restraining order will be denied since Saulino cannot demonstrate success on the merits of her claims. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that [s]he is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in h[er] favor, and that an injunction is in the public interest.").

An appropriate Order dismissing this case will be entered separately. *See* Federal Rule of Civil Procedure 58(a).

**BY THE COURT:**

*/s/ John Milton Younge*

**JOHN MILTON YOUNGE, J.**

---

[12] Saulino also filed a motion to appoint counsel, which will be denied since her claims did not pass statutory screening. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis).